IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JONAH K. KAAHU and DONNA LIAKA MARIE KAAHU, | ) ) ) | Civil No. 14-00266HG-RLP |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| MARC A. RANDALL; SCOTT JONES VALDEZ; ANDRE PHILLIP CARREIRA; RYAN NISHIMURA; JOHN PATRICK VINES; CITY AND COUNTY OF HONOLULU, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**ORDER DENYING DEFENDANTS MARC A. RANDALL, SCOTT JONES VALDEZ, ANDRE PHILLIP CARREIRA, JOHN PATRICK VINES, AND RYAN NISHIMURA'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 161)**

**and**

**GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 159)**

Plaintiffs Jonah and Donna Kaahu filed a First Amended Complaint against the City and County of Honolulu and Honolulu police officers Marc Randall, Scott Valdez, Andre Carreira, Ryan Nishimura, and John Vines.

The First Amended Complaint asserts causes of action arising from the August 22, 2012 arrest of Plaintiff Jonah Kaahu. Following his arrest, Kaahu was indicted and detained for over 150 days until a Hawaii State Circuit Court Judge dismissed the indictment with prejudice.

Plaintiffs have brought claims pursuant to 42 U.S.C. § 1983

for alleged constitutional violations along with state law claims for negligent hiring/training/supervision, assault and battery, negligence, negligent and intentional infliction of emotional distress, loss of consortium, false arrest, false imprisonment, and malicious prosecution.

The Defendant Officers and Defendant City and County filed separate Motions for Summary Judgment.

Defendants Marc A. Randall, Scott Jones Valdez, Andre Phillip Carreira, John Patrick Vines, and Ryan Nishimura's Motion for Summary Judgment (ECF No. 161) is **DENIED.**

Defendant City and County of Honolulu's Motion for Summary Judgment (ECF No. 159) is **GRANTED, IN PART, AND DENIED, IN PART.**

<u>**PROCEDURAL HISTORY**</u>

On June 9, 2014, Plaintiffs Jonah K. Kaahu and Donna Liaka Marie Kaahu filed a Complaint.  (ECF No. 1).

On September 10, 2014, Plaintiffs filed A NOTICE OF DISMISSAL AS TO ALL CLAIMS AGAINST DEFENDANTS HONOLULU POLICE DEPARTMENT, JOHN DOES 1-25, JANE DOES 1-25 AND DOE ENTITIES 1-25. (ECF No. 22).

On March 15, 2016, the Court held a Status Conference and continued the trial date and the trial-related deadlines at the Parties' request.  (ECF No. 45).

On June 1, 2016, Defendants filed Motions for Summary Judgment.  (ECF Nos. 52, 54).

On August 1, 2016, the Court issued an ORDER TO SHOW CAUSE.

(ECF No. 88).  The Court required the Parties to file memoranda concerning the representation of counsel for both Plaintiffs and Defendants pursuant to the Hawaii Rules of Professional Conduct. (Id.)

On August 8, 2016, the Court held a hearing and stayed the case pending resolution on the possible conflicts.  (ECF No. 96).

On February 6, 2017, Plaintiffs' attorney, Myles Breiner, filed an EX PARTE APPLICATION FOR LEAVE TO FILE WITHDRAWAL AND SUBSTITUTION OF COUNSEL FOR PLAINTIFFS JONAH AND DONNA KAAHU. (ECF No. 99).

On February 9, 2017, the Court granted Attorney Breiner's Application for leave to withdraw and lifted the stay on the proceedings.  (ECF No. 100).

On February 14, 2017, Attorney Terrance Revere was substituted as counsel for Plaintiffs.  (ECF No. 102).

On June 13, 2017, the Court held a Status Conference.  (ECF No. 110).

On June 29, 2017, Defendants withdrew their pending Motions for Summary Judgment.  (ECF Nos. 115, 116).

On August 15, 2017, Defendants filed Motions for Summary Judgment.  (ECF Nos. 131, 133).

On August 22, 2017, the Court granted the Parties' STIPULATION FOR DISMISSAL WITH PREJUDICE OF DEFENDANT LOUIS M. KEALOHA ONLY.  (ECF No. 139).

On September 15, 2017, Defendants withdrew their Motions for Summary Judgment.  (ECF No. 153, 154).

On September 18, 2017, Plaintiffs filed their FIRST AMENDED COMPLAINT.  (ECF No. 156).

On November 2, 2017, Defendant City and County of Honolulu filed DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT (ECF No. 159) and a CONCISE STATEMENT OF FACTS (ECF No. 160).

On the same date, the Defendant Honolulu police officers filed DEFENDANTS MARC A. RANDALL, SCOTT JONES VALDEZ, ANDRE PHILLIP CARREIRA, JOHN PATRICK VINES, AND RYAN NISHIMURA'S MOTION FOR SUMMARY JUDGMENT (ECF No. 161) and a CONCISE STATEMENT OF FACTS (ECF No. 162).

On November 20, 2017, Plaintiffs filed PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS MARC A. RANDALL, SCOTT JONES VALDEZ, ANDRE PHILLIP CARREIRA, JOHN PATRICK VINES, AND RYAN NISHIMURA'S MOTION FOR SUMMARY JUDGMENT (ECF No. 165) and a CONCISE STATEMENT OF FACTS IN OPPOSITION (ECF No. 166).

Also on November 20, 2017, Plaintiffs filed PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION TO FOR SUMMARY JUDGMENT (ECF No. 167) and a CONCISE STATEMENT OF FACTS IN OPPOSITION (ECF No. 168).

On December 4, 2017, Defendant City and County of Honolulu filed its REPLY.  (ECF No. 197).

On the same date, the Defendant Honolulu police officers filed their REPLY.  (ECF No. 198).

On December 12, 2017, the Court held a hearing on the Defendants' Motions for Summary Judgment.  (ECF No. 199).

The Parties agree that at approximately 5:50 p.m., on August 22, 2012, Officer Marc A. Randall, Officer Scott Jones Valdez, Corporal Ryan Nishimura, Sergeant Andre Phillip Carreira, and Lieutenant John Patrick Vines (referred to collectively as "Defendant Officers") responded to a call concerning a disturbance involving several males near Giovanni's Shrimp Truck located on the North Shore of Oahu in Kahuku. (Declaration of Marc A. Randall ("Randall Decl.") at ¶ 4, ECF No. 162-3; Declaration of Ryan Nishimura ("Nishimura Decl.") at ¶ 6, ECF No. 162-2; Declaration of John P. Vines ("Vines Decl.") at ¶ 4, ECF No. 162-5).

The dispatch reported to the Defendant Officers that there were possible weapons involved. (Randall Decl. at ¶ 4, ECF No. 162-3; Vines Decl. at ¶ 4, ECF No. 162-5).

There was a crowd of people and numerous vehicles in the area when the Defendant Officers arrived. (Randall Decl. at ¶ 6, ECF No. 162-3; Vines Decl. at ¶ 7, ECF No. 162-5; Declaration of Jonah Kaahu ("Kaahu Decl.") at ¶¶ 8-18, ECF No. 166-1). Officer Randall arrived first and stated that he "noticed multiple people running in different directions and shouting." (Randall Decl. at ¶ 6, ECF No. 162-3).

The Defendant Officers observed Plaintiff Jonah Kaahu holding a shovel and another individual holding a stick. (Randall Decl. at ¶ 6, ECF No. 162-3; Nishimura Decl. at ¶¶ 9-10,

ECF No. 162-2; Kaahu Decl. at ¶ 22, ECF No. 166-1). Defendant
Officers Randall and Valdez focused their attention on Kaahu.
(Nishimura Decl. at ¶ 12, ECF No. 162-2; Randall Decl. at ¶¶ 7-8,
ECF No. 162-3; Declaration of Scott Valdez ("Valdez Decl.") at ¶¶
7-10, ECF No. 162-4). Officer Valdez physically forced Kaahu to
the ground. (Valdez Decl. at ¶ 11, ECF No. 162-4).

Kaahu was arrested by the Defendant Officers after being
sprayed with pepper spray. (Kaahu Decl. at ¶¶ 37, 38, ECF No.
166-1; Randall Decl. at ¶ 17, ECF No. 162-3).

Kaahu was indicted for state law crimes arising from the
incident with the Defendant Officers. More than a year later, on
December 19, 2013, a Hawaii State Circuit Court Judge dismissed
the indictment with prejudice. The Circuit Court Judge stated
that the Honolulu Police Department failed to turn over "crucial
documents" that resulted in "a violation of [Kaahu's] due process
rights." (Transcript of Proceedings in State of Hawaii v. Jonah
Kaahu, Cr. No. 12-1-1384, dated December 23, 2013, at p. 7, ECF
No. 166-32). Kaahu was detained for a total of more than 150
days between August 22, 2012 and the dismissal of the indictment
on December 19, 2013. (Kaahu Decl. at ¶ 38, ECF No. 166-1).

The Parties disagree as to a number of events.

**Plaintiffs' Position:**

Plaintiffs assert that Jonah Kaahu was shoveling gravel when
a group of young males arrived in a white truck and tried to pick
a fight with him. (Kaahu Decl. at ¶¶ 7-11, ECF No. 166-1).

Kaahu did not know any of the people in the truck and did not know why they wanted to fight. (Id.) Kaahu saw one of the men pull out a knife and lunge at him. (Id. at ¶ 12). Kaahu states that he swung the shovel at the males to defend himself, his co-workers, and family members. (Id. at ¶¶ 14, 19).

Kaahu's cousin, Keoni, claims the group of males were members of the "North Shore Boyz" and one of them was flashing a gun. (Declaration of Keoni Kaahu ("Keoni Decl.") at ¶¶ 16-17, ECF No. 166-4).

Janice Souza, Plaintiff Jonah Kaahu's sister-in-law and the manager of the shrimp truck, called 911 to report the incident, and the operator informed her that they had already received calls and that officers were dispatched to the scene. (Declaration of Janice Souza, ("Souza Decl.") at ¶¶ 20-25, ECF No. 166-3).

 The men got back in the white truck and left when a black truck pulled up and several other males exited and attempted to fight with Kaahu. (Kaahu Decl. at ¶¶ 14-17, ECF No. 166-1).

Plaintiffs state that when the Defendant Officers arrived, Kaahu and others in the crowd told the officers that the males from the North Shore Boyz were the aggressors. (Id. at ¶ 20; Keoni Decl. at ¶¶ 29-32, ECF No. 166-4). Kaahu claims the Defendant Officers targeted him instead of the aggressors who were still present. (Kaahu Decl. at ¶¶ 20-22, ECF No. 166-1).

Kaahu states that he dropped the shovel when the Defendant Officers came at him with firearms and tasers drawn. (Id. at ¶

22).  He states that he ran towards the back of the parking lot
then stopped in his tracks and put his hands up as he had not
done anything wrong.  (<u>Id.</u> at ¶¶ 23-24).

Kaahu asserts that Officer Valdez tackled him to the ground
and punched him in the head "with all of his might."  (Kaahu
Decl. at ¶ 25, ECF No. 166-1; Kaahu Interview at p. 42, ECF No.
166-1).

Kaahu claims that the Defendant Officers used excessive
force including threatening the use of deadly force, punching him
in the face, punching him in the side of the head with handcuffs
"brass knuckles style," and choking him.  (Kaahu Decl. at ¶¶ 25-
30, ECF No. 166-1; Interview of Jonah Kaahu dated August 23,
2012, at pp. 42-45, ECF No. 166-1).  Kaahu states that the
Defendant Officers piled on top of him and he told them he could
not breathe.  (Kaahu Decl. at ¶¶ 27-29, ECF No. 166-1).  Kaahu
claims that in response, an officer placed him in a chokehold and
shoved his face in the ground.  (<u>Id.</u> at ¶ 29).  Officer Carreira
then pepper sprayed Kaahu in the face.

Kaahu alleges the Defendant Officers provided false
testimony to facilitate bringing criminal charges against him in
state court.  (Kaahu Interview at pp. 45-55, ECF No. 166-1; Kaahu
Decl. at ¶¶ 33, 38, ECF No. 166-1).

**The Defendants' Position:**

The Defendant Officers claim that when they arrived at the
scene Plaintiff Jonah Kaahu was holding a five-foot long shovel

and another individual was holding a stick. (Randall Decl. at ¶ 7, ECF No. 162-3; Valdez Decl. at ¶¶ 7-9, ECF No. 162-4). The Defendant Officers told the individuals to drop their weapons and the individual holding the stick complied. (Nishimura Decl. at ¶¶ 11-12, ECF No. 162-2). Defendants claim Kaahu refused to comply with the Defendant Officers and instead swung the shovel at the officers and ran away. (Declaration of Andre Phillip Carreira ("Carreira Decl.") at ¶ 9, ECF No. 162-6; Randall Decl. at ¶ 10, ECF No. 162-3; Valdez Decl. at ¶ 10, ECF No. 162-4; Vines Decl. at ¶ 10, ECF No. 162-5).

Officer Valdez states that he chased Kaahu who attempted to evade capture. (Valdez Decl. at ¶¶ 10-11, ECF No. 162-4). Officer Valdez claims he "caught Jonah with my right arm and forced him to the ground. Both Jonah and I fell to the ground as a result." (Id. at ¶ 11).

The Defendant Officers allege Kaahu resisted arrest, held his arms under his body, swung a fist at one of the officers, and intentionally bit Officer Randall, breaking the skin. (Randall Decl. at ¶¶ 15-17, ECF No. 162-3).

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party.

<u>Nidds v. Schindler Elevator Corp.</u>, 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." <u>T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  <u>Celotex</u>, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. <u>Id.</u>

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. <u>Commodity Futures Trading Comm'n v. Savage</u>, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); <u>Brinson v. Linda Rose Joint Venture</u>, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."

Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The Court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial. Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). When the non-moving party relies only on its own affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993); see also Nat'l Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).

## ANALYSIS

Plaintiffs Jonah and Donna Kaahu (collectively, "Plaintiffs") assert multiple causes of action against the City and County of Honolulu and five Honolulu Police Officers: Officer Marc Randall, Officer Scott Valdez, Sergeant Andre Carreira, Corporal Ryan Nishimura, and Lieutenant John Vines (collectively,

"the Defendant Officers").

Plaintiffs are suing the Defendant Officers in their individual and official capacities.

**CAUSES OF ACTION IN PLAINTIFFS' FIRST AMENDED COMPLAINT**

Plaintiffs label their claims as causes of action.

<u>**FEDERAL QUESTIONS**</u>:

<u>Cause of Action 1</u>:     **Excessive Force** pursuant to 42 U.S.C. § 1983

<u>Stated by</u>:
Plaintiff Jonah Kaahu

<u>Stated against</u>:
The City and County of Honolulu and Marc Randall, Scott Valdez, Andre Carreira, Ryan Nishimura, and John Vines

<u>Cause of Action 2</u>:     **Unreasonable Pretrial Detention** pursuant to 42 U.S.C. § 1983

<u>Stated by</u>:
Plaintiff Jonah Kaahu

<u>Stated against</u>:
The City and County of Honolulu and Marc Randall, Scott Valdez, Andre Carreira, Ryan Nishimura, and John Vines

<u>Cause of Action 3</u>:     **Loss of Companionship** pursuant to 42 U.S.C. § 1983

<u>Stated by</u>:
Plaintiff Donna Kaahu

<u>Stated against</u>:
The City and County of Honolulu and Marc Randall, Scott Valdez, Andre Carreira, Ryan Nishimura, and John Vines

<u>Causes of Action 4 and 5</u>:     **Municipal Liability** pursuant to 42 U.S.C. § 1983 and <u>Monell</u> for its policy/custom and failure to train/supervise

Stated by:
Plaintiffs Jonah and Donna Kaahu

Stated against:
The City and County of Honolulu

**STATE LAW CAUSES OF ACTION:**

Cause of Action 6: **Negligent Hiring/Training/Supervision**

Stated by:
Plaintiff Jonah and Donna Kaahu

Stated against:
The City and County of Honolulu

Cause of Action 7: **Assault and Battery**

Stated by:
Plaintiff Jonah Kaahu

Stated against:
The City and County of Honolulu and Marc Randall, Scott Valdez, Andre Carreira, Ryan Nishimura, and John Vines

Cause of Action 8: **Negligence**

Stated by:
Plaintiff Jonah Kaahu

Stated against:
The City and County of Honolulu and Marc Randall, Scott Valdez, Andre Carreira, Ryan Nishimura, and John Vines

Cause of Action 9: **Negligent Infliction of Emotional Distress**

Stated by:
Plaintiffs Jonah and Donna Kaahu

Stated against:
The City and County of Honolulu and Marc Randall, Scott Valdez, Andre Carreira, Ryan Nishimura, and John Vines

Cause of Action 10: **Intentional Infliction of Emotional Distress**

Stated by:

Plaintiffs Jonah and Donna Kaahu

Stated against:
The City and County of Honolulu and Marc
Randall, Scott Valdez, Andre Carreira, Ryan
Nishimura, and John Vines

Cause of Action 11: **Loss of Consortium**

State by:
Plaintiff Donna Kaahu

Stated against:
The City and County of Honolulu and Marc
Randall, Scott Valdez, Andre Carreira, Ryan
Nishimura, and John Vines

Cause of Action 12: **False Arrest/Imprisonment**

Stated by:
Plaintiff Jonah Kaahu

Stated against:
The City and County of Honolulu and Marc
Randall, Scott Valdez, Andre Carreira, Ryan
Nishimura, and John Vines

Cause of Action 13: **Malicious Prosecution**

Stated by:
Plaintiff Jonah Kaahu

Stated against:
The City and County of Honolulu and Marc
Randall, Scott Valdez, Andre Carreira, Ryan
Nishimura, and John Vines

## I.   DEFENDANT OFFICERS' MOTION FOR SUMMARY JUDGMENT (ECF No. 161)

### A.   Qualified Immunity As To Plaintiffs' Section 1983 Causes of Action

The Defendant Officers assert that they are entitled to
qualified immunity from liability for the Plaintiffs'
constitutional claims for excessive force, unreasonable

14

detention, and loss of companionship as stated in Causes of
Action 1-3 pursuant to 42 U.S.C. § 1983.

The doctrine of qualified immunity protects law enforcement
officials from liability for civil damages under Section 1983
when performing discretionary functions, unless their conduct
violates clearly established rights that a reasonable person
would have known.  Jackson v. City of Bremerton, 268 F.3d 646,
651 (9th Cir. 2001).  Qualified immunity is immunity from suit,
rather than a defense to liability.  Mitchell v. Forsyth, 472
U.S. 511, 526 (1985).

The Ninth Circuit Court of Appeals utilizes a two-step test
to determine whether an officer is entitled to qualified
immunity.  Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011)
(en banc).

The first step asks whether the officer's conduct,
considered in the light most favorable to the plaintiff claiming
the injury, violated the plaintiff's constitutional right.  Id.
at 440-41.  If the answer is in the negative, the officer is
entitled to qualified immunity.  Jackson, 268 F.3d at 651.  If
the answer to the first step is in the affirmative, the second
step must be considered.  Mattos, 661 F.3d at 440.

The second step inquires if the constitutional right that
was violated was clearly established at the time of the incident.
Id. (citations omitted).  A constitutional right is clearly
established if "its contours were sufficiently clear that every
reasonable official would have understood that what he is doing

violates that right." Id. at 442 (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)). The officer is entitled to qualified immunity if the law at the time of the incident did not clearly establish that the officer's conduct violated the United States Constitution, and, therefore failed to put the officer on fair notice. Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curiam).

Plaintiffs claim that the Defendant Officers' actions clearly violated their constitutional rights in three ways: excessive force, unreasonable detention, and loss of companionship.

### 1. Violations of Plaintiffs' Constitutional Rights

#### a. Excessive Force

First, Plaintiff Jonah Kaahu alleges that the Defendant Officers applied excessive force in the course of his August 22, 2012 arrest, in violation of the Fourth Amendment to the United States Constitution.

Claims of excessive force are examined pursuant to the Fourth Amendment and its objective reasonableness standard. Brosseau, 543 U.S. at 197. The United States Supreme Court has instructed the lower courts that ascertaining whether the force employed by an officer is reasonable pursuant to the Fourth Amendment requires a balancing of the intrusion on the plaintiff's Fourth Amendment interests against the government's countervailing interests. Graham v. Connor, 490 U.S. 386, 396

(1989) (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 7-8 (1985)).

The balancing test requires an analysis of the totality of the circumstances. <u>Mattos</u>, 661 F.3d at 440-41 (citations omitted). Courts analyze the reasonableness of an officer's use of force from the viewpoint of a reasonable officer at the scene. <u>C.V. by & through Villegas v. City of Anaheim</u>, 823 F.3d 1252, 1255 (9th Cir. 2016) (quoting <u>Graham</u>, 490 U.S. at 396).

Courts examine the form and amount of force that the officers inflicted when evaluating the nature and quality of the intrusion upon a person's Fourth Amendment rights. <u>Young v. Cnty. of Los Angeles</u>, 655 F.3d 1156, 1161 (9th Cir. 2011). The Ninth Circuit Court of Appeals has indicated that the availability of alternative methods of detaining the suspect, and the plaintiff's mental and emotional state, may also be considered. <u>Brooks v. Clark Cnty.</u>, 828 F.3d 910, 920 (9th Cir. 2016) (quoting <u>Luchtel v. Hagemann</u>, 623 F.3d 975, 980 (9th Cir. 2010)).

The reasonableness of the use of force requires careful attention to the facts and circumstances of each particular case. <u>Cnty. of Los Angeles, Cal. v. Mendez</u>, 137 S.Ct. 1539, 1546 (2017).

### b. Pretrial Detention

<u>Second</u>, Plaintiff Jonah Kaahu challenges his pretrial detention on Fourth Amendment grounds. The Fourth Amendment protects the right of the people to be secure in their persons

against unreasonable seizures.  Manuel v. City of Joliet, Ill.,
137 S.Ct. 911, 917 (2017).  The Fourth Amendment prohibits
government officials from detaining a person in the absence of
probable cause.  Id. at 918.  A person is confined without
constitutionally adequate justification when a judge's probable
cause determination is predicated solely on a police officer's
false statements.  Id.

### c.  Loss of Companionship

Third, Plaintiff Donna Kaahu alleges that the actions of the
Defendant Officers interfered with her liberty interest in the
companionship of her husband.

Spouses may assert substantive due process claims pursuant
to the Fourteenth Amendment to the United States Constitution if
official conduct deprives them of the liberty interest in the
companionship of their spouse.  Lemire v. Cal. Dep't of Corr. &
Rehab., 726 F.3d 1062, 1075 (9th Cir. 2013); Morales v. City of
Delano, 852 F.Supp.2d 1253, 1273-74 (E.D. Cal. 2012).  The
Fourteenth Amendment's Due Process Clause creates a right to be
free from excessive force which shocks the conscience.  Wilkinson
v. Torres, 610 F.3d 546, 554 (9th Cir. 2010).

### d.  State Constitutional Claims Are Not Available
Pursuant to Section 1983

In the First Amended Complaint, Plaintiffs also state that
their Section 1983 causes of action are brought for violations of

"the Constitution and laws of the State of Hawaii." (First Amended Complaint at ¶ 117, ECF No. 156). Plaintiffs are unable to assert a Section 1983 claim pursuant to a violation of the Hawaii State Constitution or state law.

Section 1983 is a remedy for violations of federal rights. Violations of state law, including a state constitution, are not cognizable pursuant to Section 1983. Maizner v. Hawaii Dept. of Educ., 405 F.Supp.2d 1225, 1240 (D. Haw. 2005) (citing Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)).

Plaintiffs are also unable to use violations of the Hawaii Constitution as an independent cause of action. Courts in Hawaii have declined to recognize a direct private cause of action for damages resulting from the violation of rights guaranteed under the provisions of the Hawaii Constitution. Davis v. Abercrombie, No. CIV. 11-00144 LEK-BMK, 2014 WL 3809499, at *15 (D. Haw. July 31, 2014); Makanui v. Dep't of Educ., 721 P.2d 165, 170 n. 2 (Haw. Ct. App. 1986); see Ilae v. Tenn, No. CIV. 12-00316 ACK-KSC, 2013 WL 4499386, at *17 (D. Haw. Aug. 20, 2013).

## 2. There Are Genuine Issues of Material Fact As To The Violations Of Plaintiffs' Constitutional Rights

Here, there are genuine issues of material fact as to the arrest and detention of Plaintiff Jonah Kaahu that prevent summary judgment on the question of qualified immunity.

### a.   Questions Of Fact As To The Force Used

Plaintiffs have produced statements from multiple witnesses asserting that the Defendant Officers used an unreasonable amount of force to detain Kaahu, including intentionally punching him with handcuffs used as brass knuckles, along with hitting, kneeing, and choking.

Plaintiffs state that Officer Valdez tackled Kaahu and punched him in the head with a closed fist after he voluntarily stopped running from the officers. (Kaahu Decl. at ¶ 25, ECF No. 166-1; Kaahu Interview Transcript at pp. 41-42, ECF No. 166-1; Police Statement of Amanda Aquino at p. 1, ECF No. 166-12; Police Statement of Jarren-James Kaiahua-Fleming at p. 2, ECF No. 166-15). According to Plaintiffs, the punch caused Kaahu to lose consciousness for a few seconds and fall to the ground. (Kaahu Decl. at ¶¶ 25, ECF No. 166-1; Kaahu Interview Transcript at p. 42, ECF No. 166-1).

Plaintiffs state that after Kaahu landed on the ground, three or four officers piled on top of him. (Police Statement Kaiahua-Fleming Statement at p. 2, ECF No. 166-15; Police Statement of Rochelle Russell at p. 1, ECF No. 166-11). Laying on his stomach, Kaahu told the Defendant Officers that he could not breathe. (Id.; Kaahu Decl. at ¶ 26, ECF No. 166-1; Kaahu Interview Transcript at p. 17; Police Statement of Russell at p. 1, ECF No. 166-11).

Plaintiffs assert that while Kaahu was on his stomach,

Officer Randall hit him in the head and mouth with handcuffs and placed him in a chokehold. (Kaahu Decl. at ¶ 30, ECF No. 166-1; Kaahu Interview Transcript at p. 45, ECF No. 166-1; Police Statement of Tyler McCoy at p. 2, ECF No. 166-7; Police Statement of Russell, ECF No. 166-11; Kaahu Interview Lineup Identifying Officer Randall at 2, ECF No. 166-16).

According to Plaintiffs, the chokehold restricted Kaahu's breathing, to which Kaahu reflexively responded by biting Officer Randall's forearm. (Kaahu Decl. at ¶¶ 27-29, ECF No. 166-1). Witness statements provided by Plaintiffs indicate that during the scuffle, either Officer Valdez or Officer Randall forcefully pushed Kaahu's head into the ground. (Police Statement of Hilary Benkmen at p. 2, ECF No. 166-8; Police Statement of Aquino at p. 2, ECF No. 166-12; Police Statement of Russell, ECF No. 166-11).

Plaintiffs also claim that Corporal Nishimura bent Plaintiff's fingers back and that Lieutenant Vines was involved in holding down Plaintiff during the encounter. (Pla.'s Partial Video of the Incident, ECF No. 169).

It is undisputed that Sergeant Carreira applied pepper spray to Kaahu's face. (Carreira Decl. at ¶ 19, ECF No. 162-6). According to Plaintiffs, Officer Valdez grabbed Kaahu's arms and raised them high behind his neck, causing his left shoulder to dislocate. (Kaahu Police Interview at p. 25, attached as Ex. 2 to Pla.'s CSF, ECF No. 166-6). Plaintiffs allege that Officer Valdez attempted to break Kaahu's fingers while lifting his arms. (Id. at p. 26). Plaintiffs claim that after Kaahu was

handcuffed, Officer Valdez stepped on Kaahu's ribs.  (Id. at p. 27).

The Defendant Officers disagree with Plaintiffs' characterization of events, but they do not dispute that Officer Valdez tackled or caused Kaahu to fall to the ground, that Officer Randall placed Kaahu in a headlock and hit Kaahu in the head at least once, and that Sergeant Carreira applied pepper spray to Kaahu's face.  (Valdez Decl. at ¶¶ 11-16, ECF No. 162-4; Randall Decl. at ¶¶ 11-17, ECF No. 162-3; Carreira Decl. at ¶ 19, ECF No. 162-6).

The Parties have presented conflicting evidence concerning how many times Kaahu was struck, which of the Defendant Officers struck Kaahu, and the magnitude of force to which Kaahu was subjected.  See Loharsingh v. City & Cnty. of S.F., 696 F.Supp.2d 1080, 1104 (N.D. Cal. 2010) (denying defendants' motion for summary judgment on excessive force claim where the plaintiff could not attribute specific blows to each officer).

> **b.    Questions Of Fact As To The Need To Apply The Force Used**

There are also disputes of fact as to the immediate threat that Kaahu posed to the officers and others.  Plaintiffs argue that Kaahu was holding the shovel to protect his co-workers from men who threatened them, and that he dropped the shovel pursuant to the officers' commands.  (Kaahu Decl. at ¶¶ 14, 19, ECF No. 166-1; Kaahu Police Interview at p. 5, ECF No. 166-6).  It is

Plaintiffs' position that the officers did nothing to ascertain
the status of the threat called in by Kaahu's employer.
Plaintiffs maintain the officers ignored the threatening
intruders and disregarded the statements from the crowd that
Kaahu was protecting them.

The Defendant Officers claim that Kaahu did not comply with
their commands and swung the shovel towards Officers Randall and
Valdez.  (Randall Decl. at ¶ 10, 162-3; Valdez Decl. at ¶ 10, ECF
No. 162-4).  Kaahu disputes swinging the shovel at the Defendant
Officers.

The Parties also disagree as to whether Kaahu was actively
resisting arrest.  The Parties agree that Kaahu ran away from the
officers who had drawn guns.  (Kaahu Decl. at ¶ 22-24, ECF No.
166-1).  Plaintiffs state, however, that Kaahu stopped running on
his own volition, turned around, and put his hands up before
Officer Valdez reached him.  (Id.)  The Defendant Officers assert
that Kaahu actively resisted arrest and ran from them, which
resulted in him being taken to the ground.

Defendants argued in their Replies that the evidence relied
upon by the Plaintiffs is not authenticated and contains
inadmissible hearsay.  At the hearing, Defendant withdrew their
authentication objection.

A number of the exhibits are declarations from witnesses,
including Plaintiffs, and are properly before the Court.  Fed. R.
Evid. 901(b)(1).  Jonah Kaahu, Donna Kaahu, Keoni Kaahu, and
Janice Souza have also authenticated evidence in their

declarations.  Id.  In addition, the Court takes judicial notice
of the proceedings in State of Hawaii v. Jonah Kaahu, Crim. No.
12-1-1384.  Fed. R. Evid. 201; Mendez v. Optio Solutions, LLC,
219 F.Supp.3d 1012, 1014 (S.D. Cal. 2016) ("judicial notice of
court records is routinely accepted").  The Court takes judicial
notice of the Honolulu Police Department Statement Forms HPD-252
made by Jarren-James Kaiahua-Fleming, Lisa Evangelista, Jordan
Hammond, Amanda Aquino, and Rochelle Russell attached as Exhibits
B-F to Defendant's Second Motion to Dismiss for Violation of
H.R.P.P. Rule 16, which were authenticated by Attorney Myles
Breiner.  United States v. Howard, 381 F.3d 873, 876 n.1 (9th
Cir. 2004) (taking judicial notice of court records in a
different case).

On December 23, 2013, the Hawaii State Circuit Court Judge
held a hearing on Kaahu's motion to dismiss the indictment for
violations of Hawaii Rule of Penal Procedure 16.  (Findings of
Fact, Conclusions of Law, and Order Granting Defendant's Second
Motion to Dismiss for Violation of H.R.P.P. Rule 16, State of
Hawaii v. Jonah Kaahu, Cr. No. 12-1-1384 dated February 5, 2014).
The State Circuit Court Judge found that Kaahu requested
discovery from the Honolulu Police Department for information
surrounding his arrest on August 22, 2012.  (Id. at ¶¶ 2-13).
The Judge stated that more than a year later, "[o]n December 18,
2013, while preparing for trial, defense counsel found five (5)
HPD 252 statement forms of Jarren-James Kaiahua-Fleming, Lisa
Evangelista, Jordan Hammond, Amanda Aquino, and Rochelle Russell

that were previously provided to [Honolulu Police Department's Professional Standards Office]." (Id. at ¶ 14). "These five (5) HPD 252 forms containing clear exculpatory evidence were never provided to the Court, the prosecution, and the defense." (Id. at ¶ 15).

The State Circuit Court Judge held that "the State's failure to provide the five (5) exculpatory HPD 252 statements to the defense is a violation of H.R.P.P. Rule 16." (Id. at ¶ 16). The State Circuit Court Judge also found that "[u]nder Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), Defendant's due process rights were violated, resulting in prejudice to the Defendant." (Id. at ¶ 17).

Here, Defendants request that the Court disregard these same five witness statements that were the basis for the dismissal of Jonah Kaahu's criminal charges in State Court. The City and County of Honolulu and the Defendant Police Officers argue that the five eyewitness statements that were withheld by the Honolulu Police Department in the prosecution of Kaahu should not be considered for purposes of their Motions for Summary Judgment.

The Court will consider the five eyewitness statements in evaluating Defendants' Motions for Summary Judgment. The State Circuit Court Judge ruled that the five eyewitness statements contained exculpatory information that supported Kaahu's version of events. The eyewitness statements contain relevant, probative information that may be presented in an admissible form at trial

by the witnesses themselves.  At the summary judgment stage, the focus is not on the admissibility of the form of the evidence. The focus is on the admissibility of its contents.  <u>Stonefire Grill, Inc. v. FGF Brands, Inc.</u>, 987 F.Supp.2d 1023, 1037 (C.D. Cal. 2013) (citing <u>Norse v. City of Santa Cruz</u>, 629 F.3d 966, 973 (9th Cir. 2010)).  The contents of the eyewitness' statements to the police could be presented in an admissible form at trial, and the statements set forth genuine issues of material fact that prevent granting the Defendants' Motions.  <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036-37 (9th Cir. 2003).

There are additional questions of fact as to the involvement of Corporal Nishimura, Sergeant Carreira, and Lieutenant Vines and if they acted as supervisors and had a duty to intercede. <u>Maxwell v. Cnty. of San Diego</u>, 708 F.3d 1075, 1086 (9th Cir. 2013).  In <u>Maxwell</u>, the appellate court affirmed the denial of summary judgment and held that the plaintiff presented evidence that the supervisory officers tacitly endorsed the beating of a person and the use of pepper spray.  The appeals court found that the ranking officers could be liable under Section 1983 when they witnessed the violations of the plaintiff's constitutional rights and failed to intervene.  <u>See also</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1207-08 (9th Cir. 2011); <u>Hansen v. Black</u>, 885 F.2d 642, 646 (9th Cir. 1989).

### c. Questions of Fact As To Events Following The Arrest

Plaintiffs also claim that the Defendant Officers lied about the incident in order to bring charges against Plaintiff Jonah Kaahu. According to Jonah Kaahu, "[w]hile I'm sitting next to the patrol car waiting for the officers to take me to the hospital, I could hear the supervising officer Andre [Carreira] coaching the other officer on what he needs to bring certain charges." (Kaahu Decl. at ¶ 33, ECF No. 166-1). The Defendant Officers' statements resulted in Plaintiff being indicted for Criminal Property Damages in the First Degree, Assault Against a Law Enfocement Officer in the First Degree, and Terroristic Threatening in the First Degree, all of which were dismissed with prejudice by the Hawaii State Court Judge.

The Hawaii State Circuit Court Judge found that the Honolulu Police Department failed to turn over exculpatory evidence to Kaahu's defense in the Hawaii State Court prosecution. (Findings of Fact, Conclusions of Law, and Order Granting Defendant's Second Motion to Dismiss for Violation of H.R.P.P. Rule 16, State of Hawaii v. Jonah Kaahu, Cr. No. 12-1-1384). There are questions as to the involvement of the individual Defendant Police Officers and their roles in the violation of Kaahu's due process rights in Hawaii State Court. There is evidence that the Defendant Officers targeted the Plaintiffs following Kaahu's August 22, 2012 arrest.

On December 3, 2013, Plaintiff Donna Kaahu wrote a letter to

the State Circuit Court Judge before whom Kaahu appeared on the state charges.  The letter explained that,

> After this incident on Aug. 22, 2012 the same officers
> in this case Marc Randell [sic] and Scott Valdez pulled
> us over several times and had our cars towed twice.  I
> was also followed to the store once by Officer Scott
> Valdez, he just sat in his car and stared which made me
> feel very uncomfortable.  I made a complaint to their
> sergeant because I felt like they were harassing us ...
> These officers made it known to my husband and myself
> that they were going to do anything to make our lives
> hard because of the case and because they knew we went
> to internal affairs.

(Letter from Donna Kaahu to Judge Edward H. Kubo, Jr. dated December 3, 2013, ECF No. 166-2).

The Ninth Circuit Court of Appeals has stated that, "in police misconduct cases, summary judgment should only be granted 'sparingly' because such cases often turn on credibility determinations by a jury."  Espinosa v. City & Cnty. of S.F., 598 F.3d 528, 537 (9th Cir. 2010) (citation omitted).

### 3. There Are Genuine Issues of Material Fact As To Whether The Defendant Officers' Conduct Violated Plaintiffs' Clearly Established Constitutional Rights

The Defendants request summary judgment on the basis of qualified immunity.  The ultimate answer to whether the Defendant Officers' conduct violated a clearly established constitutional right depends on issues of fact that are in dispute.  Where, as here, a dispute over material facts concerning police officers' actions exists, the Ninth Circuit Court of Appeals has instructed the district courts to determine whether, on the facts offered in

support of the plaintiff's claim, the alleged constitutional violation was clearly established at the time of the incident. See Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1060 (9th Cir. 2003).

Prior to the August 22, 2012 incident, controlling law in the Ninth Circuit established that a non-violent or passively resisting suspect has the right to be free from the application of non-trivial force. Gravelet-Blondin v. Shelton, 728 F.3d 1086, 1093 (9th Cir. 2013) (citing Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012)). Punches and other body blows are considered forms of "significant force" that present a substantial risk of bodily injury or death. Garlick v. Cnty. of Kern, 167 F.Supp.3d 1117, 1147 (E.D. Cal. 2016) (citing Blankenhorn v. City of Orange, 485 F.3d 463, 480 (9th Cir. 2007)). Techniques that induce suffocation, such as chokeholds, may not be applied to non-violent suspects. See Drummond ex rel. Drummond, 343 F.3d at 1061. Similarly, the use of pepper spray to subdue non-violent suspects has been held to be excessive since well before 2012. Headwaters Forest Def. v. Cnty. of Humboldt, 276 F.3d 1125, 1131 (9th Cir. 2002). It was clearly established that police officers would be prohibited from using handcuffs "as brass knuckles" in order to punch a suspect. Similarly, it was clearly established that police officers are precluded from lying in order to detain a suspect.

The disputed facts require that the Defendant Officers' Motion for Summary Judgment as to Plaintiffs' Section 1983 causes

of action for violations of the United States Constitution, on the basis of qualified immunity, is **DENIED.**

### B. Conditional Privilege As To Plaintiffs' State Law Causes of Action

The Defendant Officers argue that as a matter of law, Plaintiffs may not proceed on their state law causes of action for assault and battery, negligence, negligent and intentional infliction of emotional distress, loss of consortium, false arrest, false imprisonment, and malicious prosecution, because the Defendant Officers are protected by the doctrine of conditional privilege.

Hawaii law provides non-judicial government officials with conditional privilege as to their tortious actions made in the performance of their public duties. Towse v. State of Hawaii, 647 P.2d 696, 702 (Haw. 1982). The conditional privilege does not apply where there is clear and convincing evidence that government officials acted with malice. Id. Malice is defined as "the intent, without justification or excuse, to commit a wrongful act, reckless disregard of the law or of a person's legal rights, and ill will; wickedness of heart." Awakuni v. Awana, 165 P.3d 1027, 1042 (Haw. 2007) (internal quotations omitted). Hawaii courts leave the question of malice to the jury. Runnels v. Okamoto, 525 P.2d 1125, 1129 (Haw. 1974).

Plaintiffs have produced sufficient evidence to raise a genuine issue of material fact as to whether the Defendant

Officers maliciously subjected Kaahu to excessive force. Kaahu's statement, and the statements of other witnesses, accuse each Defendant Officer of using excessive force or knowingly allowing the other officers to use excessive force. Evidence of malice encompasses the allegation that Officer Valdez punched Kaahu in the head after Kaahu stopped running away from the officers and appeared to surrender. Evidence that handcuffs were used as brass knuckles to punch Kaahu after he was on the ground is also evidence that could support a finding of malice. (Kaahu Decl. at ¶¶ 24-32, ECF No. 166-1; Kaahu Police Interview at pp. 5-6, 15-16, 24, ECF No. 166-6; McCoy Police Statement at p. 2, ECF No. 166-7).

There are questions of fact concerning the Defendant Officers' interaction with Kaahu, and whether the officers' actions were motivated by malice or a legitimate desire to quell a chaotic situation and arrest an actively resisting suspect. The issue of whether the Defendant Officers acted with malice is a matter for the jury. Runnels, 525 P.2d at 1129.

The Defendant Officers' Motion for Summary Judgment as to Plaintiffs' state law causes of action, on the basis of conditional privilege, is **DENIED.**

### C. State Law Claims of False Arrest/Imprisonment And Malicious Prosecution Against Defendant Officers

The Defendant Officers move for summary judgment as to Plaintiffs' false arrest/imprisonment and malicious prosecution

causes of action on the basis that there was probable cause to arrest Plaintiff Jonah Kaahu.

To bring a claim for false arrest or imprisonment, a plaintiff must demonstrate that the detention was against the plaintiff's will and the detention was unlawful. Reed v. City & Cnty. of Honolulu, 873 P.2d 98, 109 (Haw. 1994); see Young v. Allstate Ins. Co., 198 P.3d 666, 680 (Haw. 2008). For malicious prosecution, a plaintiff must demonstrate that the criminal proceedings were initiated without probable cause and initiated with malice. Reed, 873 P.2d at 109.

The determination of probable cause is a defense to the common law claims of false arrest, false imprisonment, and malicious prosecution. Id.; Towse, 647 P.2d at 704.

There are questions of material fact as to whether the Defendant Officers had probable cause to arrest Plaintiff Jonah Kaahu. In their Motion, the Defendant Officers claim that Defendant was arrested for Disorderly Conduct, Assault Against a Law Enforcement Officer in the First Degree, and Terroristic Threatening in the First Degree. (Motion at p. 11, ECF No. 161-1). Review of the Indictment, however, demonstrates that Plaintiff was indicted for Criminal Property Damage, Assault Against A Law Enforcement Officer, and Terroristic Threatening in the First Degree. It is not possible at this stage to determine if probable cause for arrest existed given the number of facts in dispute.

The Defendant Officers argue that they cannot be liable for

malicious prosecution because they did not "initiate" the proceedings in Hawaii State Court. The disputed facts before the Court prevent a determination of what role the Defendant Officers played in initiating the proceedings against Plaintiff Jonah Kaahu.

The indictment against Jonah Kaahu was dismissed in Hawaii State Circuit Court, because the Judge found Kaahu's due process rights were violated by the Honolulu Police Department. (Transcript of Hearing dated December 23, 2013 before the Honorable Edward H. Kubo, Jr., ECF No. 166-32). Plaintiffs claim that the Defendant Officers lied in order to detain Plaintiff Kaahu. (First Amended Complaint at ¶¶ 153-55, ECF No. 156). Plaintiff Jonah Kaahu claims that he heard Sergeant Carreira "coaching" other Defendant Officers in order to facilitate bringing charges against him. (Kaahu Decl. at ¶ 33, ECF No. 166-1).

The Defendant Officers' Motion for Summary Judgment as to Plaintiffs' false arrest/imprisonment and malicious prosecution causes of action is **DENIED**.

### D. Punitive Damages Against The Defendant Officers

To obtain punitive damages in a Section 1983 case, a plaintiff must prove that the defendant's conduct was malicious, oppressive, or in reckless disregard of the plaintiff's rights. Dang v. Cross, 422 F.3d 800, 810-11 (9th Cir. 2005). A request for punitive damages is derivative of the underlying substantive

claim.  See Kentucky v. Graham, 473 U.S. 159, 167 n. 13 (1985)
(permitting punitive damages against an official in his
individual capacity).

An award of punitive damages pursuant to Hawaii law requires
a plaintiff to prove by clear and convincing evidence that the
defendant acted "wantonly or oppressively or with such malice as
implies a spirt of mischief or criminal indifference to civil
obligations; or where there has been some wilful misconduct or
that entire want of care which would raise the presumption of a
conscious indifference to consequences".  Masaki v. Gen. Motors
Corp., 780 P.2d 566, 572 (Haw. 1989) (internal quotations and
citation omitted); Kang v. Harrington, 587 P.2d 285, 291 (Haw.
1978) ("An award of punitive damages is purely incidental to the
cause of action").

Genuine issues of material fact exist as to whether the
Defendant Officers' conduct was motivated by malice such that
Plaintiffs may be entitled to punitive damages.

The Defendant Officers' Motion for Summary Judgment as to
punitive damages is **DENIED**.

In sum, there are genuine issues of material fact that
prevent summary judgment on the question of qualified immunity as
to the federal Section 1983 claims.

There are also genuine issues of material fact that prevent
summary judgment on the question of conditional privilege as to
the state law causes of action.

The Defendant Officers are not entitled to summary judgment

on the causes of action for false arrest, false imprisonment, and malicious prosecution.  There are insufficient facts as to whether there was probable cause to arrest Kaahu and questions of fact as to the Defendant Officers' involvement in the state court criminal prosecution.

The Defendant Officers' Motion for Summary Judgment (ECF No. 161) is **DENIED**.

## II.  DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT (ECF No. 159)

### A.   Plaintiffs' Section 1983 Monell Cause of Actions For Municipal Liability Pursuant to 42 U.S.C. § 1983

Municipalities are considered "persons" for purposes of suits pursuant to Section 1983.  Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690 (1978).  To impose liability against a municipality, a plaintiff must demonstrate that action pursuant to official policy, custom, or practice caused the constitutional injury.  Garmon v. Cnty. of L.A., 828 F.3d 837, 846 (9th Cir. 2016).  A municipality is not subject to respondeat superior liability pursuant to Section 1983.  Monell, 436 U.S. at 694.

A municipality may be liable in a Section 1983 action under two main theories.  Under the first theory, a municipality is liable for injuries caused by a municipality's unconstitutional policy or custom.  Monell, 436 U.S. at 694; Webb v. Sloan, 330 F.3d 1158, 1164 (9th Cir. 2003).  The official policy or custom requirement limits municipal liability to actions in which the

municipality is actually responsible for the unconstitutional act. Young v. Hawaii, 911 F.Supp.2d 972, 985 (D. Haw. 2012); Pembaur v. City of Cincinnati, 475 U.S. 469, 479-80 (1986).

The second theory under which a municipality may be held liable under Section 1983 is for failure to train, supervise, or discipline its employees. City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989). Municipal liability may be imposed pursuant to the second theory when the policymakers of the city can reasonably be said to have been deliberately indifferent to the need for better training, supervision, or discipline. Id. at 390.

### 1. **Monell Claim Against The Defendant City And County Pursuant To A Municipal Policy or Custom**

In order to establish an official policy or custom sufficient for Monell liability, a plaintiff must show either a violation resulting from an employee acting pursuant to an expressly adopted official policy, or an employee acting pursuant to a long-standing practice, or an employee acting as a final policymaker. Ellins v. City of Sierra Madre, 710 F.3d 1049, 1066 (9th Cir. 2013). A single occurrence of unconstitutional conduct by a non-policymaking employee is insufficient to establish the existence of an actionable municipal policy or custom. See Davis v. City of Ellensburg, 869 F.2d 1230, 1233-34 (9th Cir. 1989)

Monell allows the imposition of government liability not only when the challenged conduct executes or implements a formally adopted policy, but also when that conduct reflects

36

practices of municipal or state officials that are so permanent
and well settled as to constitute a custom or usage with the
force of law.  436 U.S. at 691; see Bouman v. Block, 940 F.2d
1211 (9th Cir. 1991) (finding that a plaintiff may proceed under
Monell even if there is not an express written policy).

Here, there is evidence that the Honolulu Police Department
has an actual custom or practice of failing to turn over evidence
in criminal prosecutions.  A Hawaii State Circuit Court Judge
found that the Honolulu Police Department withheld exculpatory
evidence in the state court criminal proceeding against Kaahu.
(Findings of Fact, Conclusions of Law, and Order Granting
Defendant's Second Motion to Dismiss for Violation of H.R.P.P.
Rule 16, State of Hawaii v. Jonah Kaahu, Cr. No. 12-1-1384 dated
February 5, 2014).  The evidence included the eyewitness
statements of Jarren-James Kaiahua-Fleming, Lisa Evangelista,
Jordan Hammond, Amanda Aquino, and Rochelle Russell that were
provided on Hawaii Police Department Form 252.  (Exhibits B-F
attached to the Defendant's Second Motion to Dismiss for
Violation of H.R.P.P. Rule 16, in the First Circuit, State of
Hawaii, State of Hawaii v. Jonah Kaahu, Cr. No. 12-1-1384 on
December 19, 2013).  During the hearing before the Hawaii State
Circuit Court Judge, he found that the prosecutor himself was not
personally liable, but the Honolulu Police Department was at
fault:

> This court finds that the five statements not only
> surprised this court but goes to the heart of a
> preparation for a defense.  The defendant's due process

37

rights has been violated.  At the very least, this was
<u>Giglio</u> material on the police officers.  At the very
most it was exculpatory to the defense....

[The Honolulu Police Department's] procedures are
confidential to even you and that's the fault of this
system.  Because HPD won't even provide you and your
office with things which you and your office are
entitled to, we have to run to corp counsel?  No.  The
State has the obligation.  The State has failed its
obligation....

And, you know, again, and this has happened many times
before in legal history, I'm sure, where the prosecutor
has affirmed and followed every ethical rule that he
knows or she knows of, but that the people who are duty
bound to give the prosecutor the correct and complete
information for some reason or for a reason or another
decides or doesn't do so.  It's not the prosecutor's
fault and I'm not faulting you.  In fact, I find that
you have fulfilled your obligation, especially in light
of the fact when these statements came to your
attention, then you tried to trace down the fact and
was, in essence, stonewalled by HPD because of their
own rules and regulations.

Now I'm not finding willfulness on the HPD.  There's a
smell here, and I can't quite say it stinks, but
there's a smell and so I prefer to go with what I can
prove on the record.  And the record will indicate that
I repeatedly asked for information and now I'm
surprised that the most important information that
should have been given to me I didn't have the
opportunity to see and that includes the videotapes.  I
can't say that it was willful.  Something stinks.

(Transcript of Proceedings in <u>State of Hawaii v. Jonah Kaahu</u>, Cr.

No. 12-1-1384, dated December 23, 2013, at pp. 4-18, ECF No. 166-

32).

There are questions of fact as to the Honolulu Police

Department's actions in the criminal prosecution of Kaahu and

whether a longstanding practice or custom of the Police

Department may have deprived Kaahu of his constitutional rights.

<u>Price v. Sery</u>, 513 F.3d 962, 973-74 (9th Cir. 2008) (finding

there were questions of fact if the City's practice and interpretation of its written policies violated the plaintiff's constitutional rights).

Kaahu made numerous requests for investigatory reports relating to his arrest along with any complaints against the Defendant Officers to the Honolulu Police Department's Professional Standards Office. Despite Kaahu's requests, the Honolulu Police Department failed to turn over the exculpatory evidence in violation of the Hawaii State Court Rules of Penal Procedure and Kaahu's constitutional rights.

The Hawaii State Circuit Court Judge stated at the hearing that Kaahu's due process rights were violated in the state court prosecution due to the policies of the Honolulu Police Department. There is evidence that supports a finding that the Defendant City and County of Honolulu is liable pursuant to Monell due to the Honolulu Police Department's internal policy or custom. See Dixon v. County of Cook, 819 F.3d 343, 348-49 (7th Cir. 2016) (finding there were questions of fact as to the plaintiff's Monell claim where the essence of the claim against the County was that it implemented a records policy that created barriers to informed care).

Defendant City and County of Honolulu's Motion for Summary Judgment as to Monell liability based on policy or custom is **DENIED.**

## 2. <u>Monell</u> Claim Against the Defendant City and County Pursuant To Its Failure To Train Defendant Officers

A municipality may be held liable in certain circumstances for constitutional violations for failing to train employees. <u>Canton</u>, 489 U.S. at 392. In order to prevail, the plaintiff must demonstrate that the municipality's training is so insufficient as to constitute "deliberate indifference" to the rights of persons with whom the police come into contact. <u>Id.</u> at 388. The plaintiff must show that the constitutional injury could have been avoided if the officers were properly trained. <u>Blankenhorn</u>, 485 F.3d at 484.

The Defendant City and County submitted a declaration from Lieutenant Bradon Ogata ("Lieutenant Ogata"), who works in the Honolulu Police Department's training division, as evidence that it adequately trains police officers on appropriate uses of force. (Declaration of Lieutenant Brandon Ogata ("Ogata Decl."), ECF No. 160-3). Lieutenant Ogata attests that each of the Defendant Officers successfully completed courses concerning the use of force when they attended the police academy. (<u>Id.</u> at ¶¶ 3-7). Lieutenant Ogata also states that the Defendant Officers have regularly attended Annual Recall Training, which "includes some education in the area of control and arrest tactics." (<u>Id.</u> at ¶¶ 8-11). His declaration indicates that the officers are required to know the laws governing the use of force and the Honolulu Police Department's policy, which prohibits the use

excessive force. (Id. at ¶¶ 12-17).

In addition, the Defendant City and County has put forward an official policy of the Honolulu Police Department concerning the use of force. (Use of Force Policy Number 1.04, attached as Ex. A, ECF No. 160-9). The policy provides substantial information concerning how officers are to determine what level of force is appropriate and what techniques may be permissible. (Id.) The policy discusses the use of various means of force, including chemical agents like pepper spray (pp. 8-9), strikes and kicks (pp. 9-10), and submission holds (pp. 12-13).

A pattern of constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Connick v. Thompson, 563 U.S. 51, 62 (2011). Plaintiffs have not provided evidence that the City and County's training program is insufficient.

Defendant City and County of Honolulu's Motion for Summary Judgment as to Monell liability based on failure to train is **GRANTED.**

> ### 3. Monell Claim Against Defendant City And County Pursuant To Its Failure to Supervise Defendant Officers

A municipality's failure to supervise its police officers may lead to municipal liability. Davis, 869 F.2d at 1235. A claim of inadequate supervision or discipline requires a showing that such supervision or discipline is so deficient that it

constitutes deliberate indifference to the rights of persons with whom the police come into contact.  Id. (citations omitted).

A supervisor is liable under Section 1983 for a subordinate's constitutional violations if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  Maxwell, 708 F.3d at 1086 (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Here, there are issues of fact that preclude summary judgment on Plaintiffs' failure to supervise Monell claim.  As explained above, there are genuine issues of material facts as to the alleged constitutional violations by the Defendant Officers in this case.  There are questions of fact as to the action or inaction of the supervisory officers Sergeant Carreira, Lieutenant Vines, and Corporal Nishimura.  Questions as to their participation in the circumstances surrounding Plaintiff Kaahu's arrest prevent granting summary judgment.  There are also questions if they were supervising officers who were required to prevent the other Defendant Officers from committing the alleged constitutional violations.

There is evidence that the Defendant City and County had knowledge that Defendant Officers Valdez and Randall had a history of inappropriate behavior while on duty.  Plaintiffs presented a citizen's report that alleges Officer Valdez harassed him and pushed him during a traffic stop in 2010.  (Police Statement of Matthew Smith, attached as Ex. 1, ECF No. 168-6).

There is a transcript from an internal interview of a Honolulu Police Officer describing a workplace confrontation he had with Officer Randall in 2012. (Police Interview, attached as Ex. 6. ECF No. 168-10). The interview described inappropriate slurs and actions attributed to Officer Randall. (Id.)

There are genuine issues of material fact as to whether the Defendant City and County of Honolulu provided inadequate supervision of the Defendant Officers.

Defendant City and County of Honolulu's Motion for Summary Judgment as to Monell liability based on failure to supervise is **DENIED.**

> **B.  Plaintiffs' State Law Causes Of Action Against Defendant City And County Of Honolulu**
>
> **1.  Negligent Hiring Against Defendant City And County Of Honolulu Pursuant To Hawaii State Law**

Hawaii law requires employers to exercise reasonable care when hiring persons to fill positions where the nature of the employment may pose a threat of injury to the public. Janssen v. Am. Haw. Cruises, Inc., 731 P.2d 163, 166 (Haw. 1987). For a plaintiff to prevail on a claim of negligent hiring, he must prove:

    (1)  the defendant owed a duty of care to the plaintiff;

    (2)  the defendant breached that duty by hiring an employee, even though the defendant knew, or should have known, of the employee's dangerous propensities;

    (3)  the plaintiff suffered monetarily compensable physical or emotional injuries; and,

(4)   the breach of the duty was the proximate cause of plaintiff's physical or emotional injuries.

See Murphy v. Lovin, 284 P.3d 918, 928-931 (Haw. Ct. App. 2011), *as corrected* (Jan. 10, 2012) (approving jury instruction listing the elements of negligent hiring).

Plaintiffs have produced no evidence that the Defendant City and County knew or should have known of any of the Defendant Officers' allegedly dangerous propensities prior to hiring them as Honolulu police officers.  The Defendant City and County has put forward the declaration of Lieutenant Erik Yamane, who works in the Honolulu Police Department Human Resources Division. Lieutenant Yamane attests that the Honolulu Police Department has established procedures concerning the screening of officer candidates.  (Declaration of Lieutenant Erik Yamane ("Yamane Decl.") at ¶ 5, ECF No. 160-2).  The Police Department conducts interviews, background checks, psychological and physical evaluations of officer candidates.  (Id. at ¶¶ 7-8).  Lieutenant Yamane states that information concerning a candidate's past violent behavior, and psychological, behavioral, and emotional problems are of special concern to the Police Department.  (Id. at ¶ 8).  According to Lieutenant Yamane, each of the Defendant Officers successfully completed the hiring process.  (Id. at ¶¶ 9-10).  None of the officers "had ever been under indictment for, or convicted of, any crime of violence .... None of the Officers had a history of drug use, behavioral, or emotional disorders." (Id. at ¶¶ 11-26).

Plaintiffs have not provided any evidence controverting Lieutenant Yamane's declaration.

An employer that is not on notice of an employee's potential danger prior to hire cannot be held liable as a matter of law for a negligent hiring claim. <u>Fraser v. Cnty. of Maui</u>, 855 F.Supp. 1167, 1184 (D. Haw. 1994).

Defendant City and County of Honolulu's Motion for Summary Judgment as to the negligent hiring claim is **GRANTED**.

## 2. Negligent Training Against Defendant City And County Of Honolulu Pursuant To Hawaii State Law

The elements of a negligent training claim have not been established by the Hawaii courts. <u>Id.</u> Hawaii law is clear, however, that a plaintiff must present evidence that the employer knew or should have known of the necessity and opportunity to train its employees regarding the specific conduct about which the plaintiff complains. <u>Otani v. City & Cnty. of Haw.</u>, 126 F.Supp.2d 1299, 1308 (D. Haw. 1998), aff'd, 246 F.3d 675 (9th Cir. 2000).

The California courts require a plaintiff seeking relief on a negligent training cause of action to prove that (1) the employer negligently trained the employee regarding the performance of his job duties, (2) which led the employee, in the course of executing his job duties, (3) to cause an injury or damages to the plaintiff. <u>Garcia ex rel. Marin v. Clovis Unified Sch. Dist.</u>, 627 F.Supp.2d 1187, 1208 (E.D. Cal. 2009).

As explained in the Section on Municipal Failure to Train, Plaintiffs have not demonstrated a genuine issue of material fact to show that the City and County negligently trained the Defendant Officers regarding the use of force.

Defendant City and County of Honolulu's Motion for Summary Judgment as to the state law cause of action for negligent training is **GRANTED.**

### 3. Negligent Supervision Against Defendant City And County Of Honolulu Pursuant To Hawaii State Law

The Defendant City and County of Honolulu argues that there is no evidence that it failed to supervise the Defendant Officers and seeks summary judgment on Plaintiffs' negligent supervision claim pursuant to Hawaii state law.

Negligent supervision is a recognized cause of action under Hawaii law. Fraser, 855 F.Supp. at 1184 (citing Abraham v. S.E. Onorato Garages, 446 P.2d 821, 826 (Haw. 1968)). The Hawaii Supreme Court has adopted the Restatement (Second) of Torts' standard for negligent supervision. Dairy Rd. Partners v. Island Ins. Co., 992 P.2d 93, 122 (Haw. 2000) (quoting Restatement (Second) of Torts § 317 (1995)).

Generally, the concept of negligent supervision is applied when an employee commits an act that it not within the scope of the employee's employment while under the supervisor's control. Black v. Correa, 2007 WL 3195122, *10 (D. Haw. Oct. 30, 2007) (citing Wong-Leong v. Haw. Indep. Refinery, Inc., 879 P.2d 538,

549 (Haw. 1994)).  The City and County may be found negligently liable for failure to supervise where the acts occurred outside the scope of employment and the City negligently failed to control the employee.  Id.  In the alternative, the City and County may be found negligently liable for failure to supervise where the employee committed the acts within the scope of employment under a theory of respondeat superior.  Id.; see Ryder v. Booth, 2016 WL 2745809, *10 (D. Haw. May 11, 2016).

The key factor in negligent supervision cases is whether the employer knew or should have known of the necessity and opportunity for exercising control.  Fraser, 855 F.Supp. at 1184 (quoting (Abraham, 446 P.2d at 826)).

As explained above in the Section on Municipal Failure to Supervise, Plaintiffs have produced sufficient evidence that the Defendant City and County of Honolulu should have known of the necessity to supervise the Defendant Officers.  A reasonable jury may find that the Defendant City and County negligently supervised the Defendant Officers.

Defendant City and County of Honolulu's Motion for Summary Judgment as to the state law cause of action for negligent supervision is **DENIED**.

> ## C.    Additional Hawaii State Law Causes of Action Against Defendant City and County of Honolulu Based On Respondeat Superior

The First Amended Complaint asserts the following state law tort causes of action against the Defendant City and County of

Honolulu under the respondeat superior theory of liability:

Cause of Action 6: **Assault and Battery**

Cause of Action 7: **Negligence**

Cause of Action 8: **Negligent Infliction of Emotional Distress**

Cause of Action 9: **Intentional Infliction of Emotional Distress**

Cause of Action 10: **Loss of Consortium**

Cause of Action 11: **False Arrest & False Imprisonment**

Cause of Action 12: **Malicious Prosecution**

Under Hawaii law, a municipality may be liable pursuant to respondeat superior for torts maliciously committed by an employee acting within the scope of his authority. McCormack v. City & Cnty. of Honolulu, 762 F.Supp.2d 1246, 1253 (D. Haw. 2011). Respondeat superior liability for municipalities extends to intentional torts. Alexander v. City and Cnty. of Honolulu, 545 F.Supp.2d 1122, 1136 (D. Haw. 2008).

Plaintiffs produced sufficient evidence to raise a genuine issue of material fact regarding whether the Defendant Officers acted with malice.

Defendant City and County of Honolulu's Motion for Summary Judgment as to Plaintiffs' state law tort claims is **DENIED**.

### D. Punitive Damages Against the Defendant City and County of Honolulu

Municipalities are not liable for punitive damages related

to alleged violations of the United States Constitution.  <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981).  Hawaii state law also bars litigants from pursuing punitive damages against municipalities.  <u>Eager v. Honolulu Police Dep't</u>, No. CV 15-00098 JMS-KSC, 2016 WL 471282, at *6 (D. Haw. Feb. 4, 2016) (citing <u>Lauer v. Young Men's Christian Ass'n of Honolulu</u>, 557 P.2d 1334, 1342 (Haw. 1976)).

Plaintiffs concede that punitive damages do not lie against the City and County of Honolulu.

Defendant City and County of Honolulu's Motion for Summary Judgment as to punitive damages is **GRANTED.**

In sum, Defendant City and County of Honolulu's Motion for Summary Judgment is **GRANTED, IN PART,** and **DENIED, IN PART.**

## CONCLUSION

Defendant Officers' Motion for Summary Judgment (ECF No. 161) is **DENIED.**

Defendant City and County of Honolulu's Motion for Summary Judgment (ECF No. 159) is **GRANTED, IN PART,** and **DENIED, IN PART.**

Defendant City and County of Honolulu's Motion is **GRANTED,** as to:

(1)  Section 1983 <u>Monell</u> liability based on failure to train;

(2)  state law cause of action for negligent hiring;

(3)  state law cause of action for negligent training; and,

(4)  punitive damages against the City and County of

49

Honolulu.

Defendant City and County's Motion for Summary Judgment is

**DENIED,** as to:

    (1)   Section 1983 <u>Monell</u> liability based on policy and custom;

    (2)   Section 1983 <u>Monell</u> liability based on failure to supervise;

    (3)   state law cause of action for negligent supervision; and,

    (4)   state law tort claims based on respondeat superior.

<u>**THE FOLLOWING CAUSES OF ACTION REMAIN**</u>:

**I.**   **Plaintiff Jonah Kaahu** against:
The Defendant City and County of Honolulu; and,
The Defendant Officers Randall, Valdez, Carreira, Nishimura, and Vines:

<u>Cause of Action 1</u>:  **Excessive Force** in violation of the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983

<u>Cause of Action 2</u>:  **Unreasonable Pretrial Detention** in violation of the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983

<u>Cause of Action 7</u>:  **Assault and Battery**

<u>Cause of Action 8</u>:  **Negligence**

<u>Cause of Action 12</u>: **False Arrest & False Imprisonment**

<u>Cause of Action 13</u>: **Malicious Prosecution**

**II.**  **Plaintiff Donna Kaahu** against:
The Defendant City and County of Honolulu; and,
The Defendant Officers Randall, Valdez, Carreira, Nishimura, and Vines:

<u>Cause of Action 3</u>:  **Loss of Companionship** due to Violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution Pursuant to 42 U.S.C. § 1983

Cause of Action 11: **Loss of Consortium**


**III. Plaintiffs Jonah Kaahu and Donna Kaahu** against:
     The Defendant City and County of Honolulu:

Cause of Action 4: **Monell Liability Based on Policy or Custom**
                    for United States Constitutional Violations
                    pursuant to 42 U.S.C. § 1983

Cause of Action 5: **Monell Liability Based on Failure to
                    Supervise** for United States Constitutional
                    Violations pursuant to 42 U.S.C. § 1983

Cause of Action 6: **Negligent Supervision**


**IV. Plaintiffs Jonah Kaahu and Donna Kaahu** against:
     The Defendant City and County of Honolulu; and,
     The Defendant Officers Randall, Valdez, Carreira, Nishimura,
     and Vines:

Cause of Action 9: **Negligent Infliction of Emotional Distress**

Cause of Action 10: **Intentional Infliction of Emotional Distress**


IT IS SO ORDERED.

     DATED: January 18, 2018, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Jonah K. Kaahu; Donna Liaka Marie Kaahu v. Marc A. Randall; Scott
Jones Valdez; Andre Phillip Carreira; Ryan Nishimura; John
Patrick Vines; City and County of Honolulu, Civil No. 14-00266
HG-RLP; **ORDER DENYING DEFENDANTS MARC A. RANDALL, SCOTT JONES
VALDEZ, ANDRE PHILLIP CARREIRA, JOHN PATRICK VINES, AND RYAN
NISHIMURA'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 161) and
GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT CITY AND
COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 159)**